The STATE of Ohio, Appellee,

v.

MAYHEW, Appellant.

[Cite as *State v. Mayhew* (1991), 71 Ohio App. 3d 622.]

Court of Appeals of Ohio,
Jackson County.

No. 619.

Decided March 29, 1991.

---

*Mark A. Ochsenbein,* Prosecuting Attorney, for appellee.

*John L. Detty,* for appellant.[1]

---

1. Appellant was represented by different counsel at trial.

STEPHENSON, Presiding Judge.

This is an appeal from a judgment entered by the Jackson County Court of Common Pleas following a bench trial wherein Cyril Mayhew, defendant below and appellant herein, was found guilty of two counts of rape, in violation of R.C. 2907.02, and three counts of gross sexual imposition, in violation of R.C. 2907.05. The following errors are assigned:

"1. The trial court erred in forcing the defence [*sic*] to rest prior to hearing the testimony of a witness who had been properly subpoenaed by the defense, and who was not present at the trial, which action of the court violated the Ohio constitutional rights, Article I, Section 10, and the United States Constitution Sixth Amendment rights of the defendant to have compulsory attendance of witnesses on his behalf, and thus the defendant was denied a fair trial.

"2. The trial court erred in allowing the minor child, Nicole Hill, aged four years, to testify in the proceedings as said child was not competent to testify, and thus the defendant was deprived of a fair and impartial trial.

"3. The judgment is not sustained by the evidence and is against the manifest weight of the evidence."

The following facts are pertinent to this appeal. On February 17, 1989, appellant was indicted on five counts involving sexual activity, to wit: two counts of rape, in violation of R.C. 2907.02, and three counts of gross sexual imposition, in violation of R.C. 2907.05. The alleged victim of all five counts was Nicole Hill, who was four years old at the time of the offenses.

On May 1, 1989, appellant made several motions. Among the motions filed was one for a trial date because appellant believed "that a witness critical to the defendant's case [was] intent upon leaving the jurisdiction of [the lower] court," and appellant wanted to subpoena him. He also moved, because of the age of Nicole Hill, the victim, for a hearing to determine whether she was competent to testify. On May 2, 1990, the court set the trial for July 31, 1989. The court also set the competency hearing for July 19, 1989. After the hearing, on July 21, 1989, the court determined that Nicole was in fact competent to testify at trial.

The witness appellant believed was planning to leave the jurisdiction was one Donnie Maerker, Nicole's brother. Appellant filed a precipe for the subpoena on May 10, 1989 and a subpoena was issued on May 11, 1989. The subpoena was returned with a notation that it had been served on May 17, 1989. Appellant took no further action to secure Donnie Maerker's appearance, and Maerker failed to appear at trial.

A bench trial was held on July 31 through August 1, 1989. Before the close of the case, appellant proffered to what he believed Donnie Maerker would have testified. After the conclusion of all evidence, the court found appellant guilty on all five counts. On August 10, 1989, the court sentenced appellant to ten to twenty-five years on each rape count, said sentences to run concurrently, and to two years on each of the three gross sexual imposition counts, said sentences to run concurrently with each other but consecutively to the sentences for the rape counts.

In his first assignment of error, appellant contends that the lower court erred in forcing his trial attorney to rest prior to presenting the testimony of Donnie Maerker. Appellant contends that such act violated his constitutional right to compulsory attendance of witnesses provided by Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution.

The right to compulsory attendance of witnesses at trial is undeniable. The United States Supreme Court in *Washington v. Texas* (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019, 1023, stated the following in holding that the Sixth Amendment right to compulsory attendance of witnesses was applicable to the states as incorporated in the Due Process Clause of the Fourteenth Amendment.

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This is a fundamental element of due process of law."

Accordingly, the state must aid a defendant in compelling attendance and, further, must do nothing which impedes a defendant's right to compel the attendance of a material witness. See, *e.g., United States v. Barker* (C.A. 6, 1977), 553 F.2d 1013 (state must subpoena witnesses at no cost to indigent defendants upon showing that testimony would be "relevant, material, and useful to an adequate defense"); *Washington, supra* (law which prohibited persons charged or convicted as co-conspirators in the same crime from testifying for each other violated defendant's right to relevant and material evidence of co-conspirator); *Webb v. Texas* (1972), 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (judge violated defendant's right to a fair trial after defendant's only witness refused to testify because, upon his own initiative, the judge warned the witness against committing perjury in "unnecessarily strong terms" and "effectively drove the witness off the stand"); *United States v.*

*Valenzuela–Bernal* (1982), 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (violation of due process in transportation of illegal alien cases where government deports the aliens prior to giving defendant opportunity to question them if defendant can show "that the evidence lost would be both material and favorable to the defense").

■ In the case *sub judice,* the state took no such action. It provided appellant with subpoena power and in fact subpoenaed Donnie Maerker in May 1989. The problem arose when Maerker did not appear at trial. At the time the court below was made aware of the fact that Maerker failed to appear, *i.e.,* during the second day of the trial when appellant attempted to call him as a witness, the court immediately ordered Maerker arrested and brought into court. The court later was informed that Maerker was in basic training at Fort Dix, New Jersey.

It is apparent that appellant knew that Donnie Maerker was going to leave the jurisdiction. For that reason, on May 1, 1989, he filed a request for a trial so he could subpoena Maerker immediately. Further, at trial, appellant's counsel stated the following:

"ATTORNEY MUSICK: We'll next call Donnie Maerker. Your Honor, it's been reported to me that Mr. Maerker is not present. He has been properly subpoenaed. In fact, Mr. Maerker is the substance of a request for file date filed this past May 1, 1989, by counsel for the Defendant, whereby Defendant stated grounds for this motion or request as it's labeled in the title that a witness critical to the Defendant's case has intent upon leaving the jurisdiction of the Court on account of Mr. Mayhew had heard about his leaving for the army. On May 2, the Court issued notice of trial date, jury trial, set for Monday, July 31 at 9:00 a.m. On May 10th, 1989, prior to the high school graduation, I believe, is what I based that on, I did file a praecipe with the Clerk for Donnie Maerker at the corner of Oak and Starr Streets, Jackson, or his place of employment, Kentucky Fried Chicken, and I believe that there's service on that. We've checked for Mr. Maerker in the hallway and he's not present."

Appellant never informed the court of the fact that Maerker was going to leave its jurisdiction. If the court had been informed, it could have taken one of two actions. First, it could have taken some precautions to prevent Maerker from leaving the jurisdiction. Second, even after Maerker left the jurisdiction, the court, had it been informed prior to trial, could have taken steps pursuant to the Uniform Attendance of Witnesses Act, codified in R.C. 2939.25 *et seq.,* to secure his presence.

Given the circumstances set forth above, we believe the case at bar is similar to *Lancaster v. Green* (1963), 175 Ohio St. 203, 24 O.O. 283, 192 N.E.2d

776. In *Lancaster*, the defendant was seeking habeas corpus relief as a result of the failure of the state to compel certain witnesses to attend his trial. The defendant had not been able to provide correct addresses of these witnesses, and it, therefore, was impossible for the state to compel the witnesses to attend. The Ohio Supreme Court determined there was no violation of defendant's constitutional rights. Likewise, in the case *sub judice*, appellant failed to inform the court that Donnie Maerker was leaving to go to New Jersey. It was incumbent upon appellant to give this information to the court before the state would have a duty to act.

We finally note that appellant had another option open to him. Pursuant to Crim.R. 15, Donnie Maerker could have been deposed. Appellant's counsel claimed at trial that he believed that live testimony was critical. However, deposition testimony would have been better than no testimony. The deposition could have been taken to be used only if Donnie Maerker was not present at trial.

Because we believe that appellant's own actions caused the problem of which he now complains, we find no merit to his first assignment of error and, accordingly, overrule it.

In his second assignment of error, appellant said that the trial court erred in finding that Nicole Hill was competent to testify at trial. Since we cannot reverse the trial court's ruling finding Nicole competent unless there was an abuse of discretion, see *State v. Kirk* (1987), 42 Ohio App.3d 93, 536 N.E.2d 391, we assume that is what appellant is arguing.

Evid.R. 601(A) states, in pertinent part, that "[e]very person is competent to be a witness except * * * children under ten (10) years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." See, also, R.C. 2317.01. Appellant filed a motion seeking a hearing to determine the competency of Nicole, who was four years old at the time of the act in question and five years old at the time of the trial. The hearing to determine whether Nicole was competent to testify at trial was held on July 19, 1989.

The court below found Nicole to be competent. Before we can reverse the trial court's determination, it is necessary for us to find that the court abused its discretion. The term "abuse of discretion" "connotes more than an error of law or of judgment; it implies that the court's attitude [was] unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172, 404 N.E.2d 144, 149. When applying this standard, a reviewing court is not free to merely substitute its judgment for

that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308.

In reviewing the case *sub judice* under this standard, we believe there was no abuse of discretion. It is clear that Nicole was able to recount events from the past and knew the difference between telling the truth and lying. She further understood the importance of telling the truth in court.

Appellant asserts on appeal that during a portion of cross-examination, Nicole indicated that it might be alright to lie under certain circumstances. We do not find this significant for two reasons. First, at the time the above response was elicited, it was apparent that appellant's counsel was asking questions in an attempt to produce certain responses from the witness. We note that appellant's trial counsel was properly admonished for the line of questioning which produced the above responses. He asked moral questions such as, "Would it be okay to tell a lie to keep from starving?" He also asked, "If mommy told you it was okay to lie about a certain thing, would that make it okay to lie?" These are very difficult questions for a five year old. Further, it is not relevant that Nicole might lie in certain circumstances; what is relevant is whether she was able to properly relate events to the court and do so truthfully. She indicated that she was capable of doing that.

Second, the concerns addressed by appellant mostly involved Nicole's credibility rather than her competency. Once the court determines that a person can properly recount events from the past and knows that she should tell the truth in court, she is competent. Whether or not her testimony at trial is believable is another issue. That is for the trier of fact to decide after hearing the testimony. Accordingly, since we hold that the trial court did not abuse its discretion in finding Nicole competent to testify, appellant's second assignment of error is overruled.

In his third assignment of error, appellant argues that the guilty verdict was against the manifest weight of the evidence. Appellant's basic assertions are that there was no conclusive medical evidence that Nicole was sexually abused and that "[i]n reviewing the testimony of Nicki many discrepancies arise." We note that appellant cites only one discrepancy, and that discrepancy is not within Nicole's testimony itself but involves a conflict with another witness's testimony.

In reviewing a claim that a verdict was against the weight of the evidence, "a reviewing court's duty is to review the record and determine whether there was sufficient evidence for the [trier of facts] to find the defendant guilty beyond a reasonable doubt." *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph four of the syllabus. All five counts

against appellant involved two statutes, to wit: R.C. 2907.02,[2] entitled "Rape; evidence; marriage or cohabitation not defenses to rape," and R.C. 2907.05,[3] entitled "Gross sexual imposition." Thus, we must determine whether the evidence adduced in the court below was sufficient to prove each of the elements of the crimes set forth in the R.C. 2907.02 and R.C. 2907.05.

Appellant was charged with two counts of rape under R.C. 2907.02. Hence, it is necessary to determine whether upon two occasions appellant engaged in sexual conduct with another not his spouse when the other person was less than thirteen years of age. It is not questioned that Nicole was not appellant's spouse and that she was less than thirteen years of age.[4] Thus, the question is whether appellant engaged in sexual conduct with Nicole. "Sexual conduct" is defined by R.C. 2907.01(A), as follows:

" 'Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."

█ Nicole testified that on at least one occasion appellant performed upon her an act which falls within the definition of cunnilingus and on at least one occasion forced her to engage in what is known as fellatio with him.[5] Thus, there is sufficient evidence, if believed by the trier of fact, that appellant committed two counts of rape.

█ Appellant was also charged with three counts of gross sexual imposition. Therefore, as above, it is necessary to determine whether suffi-

---

2. R.C. 2907.02 reads, in pertinent part, as follows:
 "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when either of the following apply:
 " * * *
 "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of such person."

3. R.C. 2907.05 reads, in pertinent part, as follows:
 "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons, to have sexual contact when any of the following apply:
 " * * *
 "(3) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of such person."

4. The state introduced Nicole's birth certificate which proved that she was four years old when the events occurred.

5. There was also evidence that appellant attempted to have sexual intercourse with Nicole; however, it was not specifically proven that any penetration occurred.

cient evidence was introduced from which the trier of fact could conclude that upon three occasions appellant had sexual contact with another, not his spouse, or forced another, not his spouse, to have sexual contact with him when the other person is less than thirteen years of age. As stated, *supra*, Nicole was not appellant's spouse and was less than thirteen years of age. Accordingly, we must determine whether any evidence existed from which the trier of fact could find that sexual contact occurred. "Sexual contact" is defined by R.C. 2907.01(B) as follows:

" 'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." [6]

Nicole testified at trial that on at least one occasion appellant licked her chest, that on at least one occasion appellant forced Nicole to lick his buttocks, and on one occasion appellant used a lubricant and fondled Nicole's pubic region with his fingers. Evidence of these three acts, if believed by the court as trier of fact, were sufficient for the court to find appellant guilty of all three counts of gross sexual imposition.

 Appellant does not dispute this evidence. Instead, he first contends that there was a conflict of evidence concerning whether any medical evidence existed which tended to prove that Nicole had been sexually assaulted. Dr. Boyer, who treated Nicole in the emergency room, testified that he found swelling in the labia majora and blood in her urine, the cause of which he stated was "definitely traumatic" in origin. The only evidence to contradict this evidence was the testimony of Dr. Orr, Nicole's pediatrician, who testified that she had suffered from blood in her urine in the past due to a kidney infection. Another physician, Dr. Lance, who had never examined Nicole, only testified that Dr. Boyer's report was somewhat lacking and that

---

6. We note that the state adduced no evidence at trial on the issue of whether the sexual contact, discussed *infra*, was done "for the purpose of sexually arousing or gratifying either person." Appellant does not allege any error on this point, and we hold that, even if error had been assigned, such failure by the state does not render the evidence insufficient to support the convictions.

 R.C. 2907.05 contemplates "any touching of the described areas which a reasonable person would perceive as sexually stimulating or gratifying." *State v. Astley* (1987), 36 Ohio App.3d 247, 250, 523 N.E.2d 322, 325.

 The *Astley* court then went on further to state the following at 250, 523 N.E.2d at 325–326:
 "As we stated above, R.C. Chapter 2907 is designed to protect victims of sexual crimes. * * * R.C. 2907.05(A)(3) [which prohibits sexual contact with a child less than thirteen] is a strict liability offense and requires no precise culpable state of mind. All that is required is a showing of the proscribed sexual contact."

 We believe there was sufficient evidence from which the court below could have reasonably concluded that appellant engaged the sexual acts with Nicole for sexual gratification.

there could be other causes for the inflammation and bleeding. Appellant contends that since only one doctor testified that sexual abuse occurred, medical evidence supporting the charge was lacking. Therefore, appellant asserts that the judgment was against the manifest weight of the evidence.

We disagree. First, medical evidence is not necessary to prove that rape or gross sexual imposition occurred. Second, only one doctor testified that he examined Nicole since the sexual abuse occurred. That was Dr. Boyer. Hence, he was the only doctor who had first-hand knowledge of Nicole's symptoms. Finally, the number of witnesses is immaterial. It does not matter that appellant had two witnesses who testified that the inflammation and bleeding might have had other causes and that there was only one doctor who testified that he believed sexual abuse did occur. The court below was presented all the evidence and it had to determine which evidence to believe. "It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts." *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. Accordingly, appellant's first argument is meritless.

Appellant's second contention as to why the judgment was against the manifest weight of the evidence concerns Nicole's testimony involving one incident at "Tick's house" on a bed. Appellant presented the evidence of one witness who testified that there had been no furniture in the house since at least ten days before the incident allegedly occurred. We do not believe that the fact Nicole may have confused where a certain act occurred is critical to the state's case. Nicole was five years old at the time of the trial, testifying about things which had occurred almost a year before. There were bound to be some discrepancies in her testimony. Such discrepancies would go to the weight of Nicole's testimony. Again, such an issue is for the trier of fact. See *Thomas, supra.*

After reviewing the record thoroughly, we conclude that there was sufficient evidence presented from which the court below could properly have found beyond a reasonable doubt that appellant had in fact committed the five crimes with which he was charged.[7] Accordingly, appellant's third assignment of error is overruled.

For the aforementioned reasons, the judgment of the court below is affirmed.

*Judgment affirmed.*

---

7. In addition to the evidence set forth *supra,* there was also testimony presented by Ralph Skillings who has a Ph.D. in psychology. He examined Nicole and came to the conclusion that she had been sexually abused.

Grey, and Hofstetter, JJ., concur.

Edwin T. Hofstetter, J., retired, of the Eleventh Appellate District, sitting by assignment.